This case presents the certified question as to whether or not the record was sufficiently developed in the district court so as to warrant that court granting the motion to dismiss without the need for an evidentiary hearing or whether or not the uncontroverted facts made it clear that the relief would not be warranted. I would submit that there's no question in this case the record established a mental illness of the appellant and a nexus of that mental illness to his inability to understand his obligations under the law. There's no question also that the record was incomplete and ambiguous and I think clearly if it were entirely absent the state of California doesn't seem to argue that the Laws v. Lamar case would apply and an evidentiary hearing would be necessary. Is it correct that you've got six years that you need equitable tolling for? How much time do you need equitable tolling to cover? There were several years. I don't have the exact number of years in front of me. Was it six? I think it was closer to two and a half, I believe. That's all? Did the medical record show periods of lucidity in there? They do intermittently. However, they're highly incomplete and the parts of the record that are referred to, I believe, are taken out of context and the totality of those records establish a continuing pattern of psychosis and inability to It's a lifetime disease, but people who are schizophrenic often have extended periods where the medication works and they're lucid. My wife once had a research assistant who was schizophrenic and he was an excellent statistician, subsequently got a job at the Census Bureau as a statistician. As long as he controlled it with medication, he functioned well. And I'm trying to figure out whether the record demonstrates that this fellow is like that. I don't believe it does, Your Honor. I think if you look at the reply brief, it goes in great detail analyzing all the parts of the record that the appellee refers to in which there's some indication that he was lucid at times. In the same records that they refer to, there's contrary Why don't you lay out the timeline and the lucidity and show that it's inadequate? It's a little hard to follow all the details. Well, again, I think the reply brief attempts to do that in some detail. I hesitate to try to repeat what's in the brief. I think if you go through each of the parts of the record that appellee relies on in which statements are made that he appears to have periods of lucidity, those same records indicate things of the sort that he believes Satan is involved in his life, that God is telling him certain things. And I think when you – I mean, the problem here, Your Honor, is the allegations in the initial statement clearly allege that he was suffering from an illness that interfered with his ability to understand what was going on in the nexus. The issue here is whether or not the evidence you're hearing would have explicated and allowed this report to reach conclusions that may or may not have been warranted. The only difference between this case and Laws v. Lamarck is in Laws there was no – What would you have at the evidence you're hearing? What would you be putting on? Well, number one, I believe a full set of records from his incarceration would be warranted. Remember, this is a pro se petitioner with limited access to the records. There was nothing to prevent the State of California from introducing evidence in support of their motion rather than essentially having as a trap for the unwary pro se petitioner and having him try to gather records in his own manner given the fact that he was suffering from mental illness and relying on – So he'd get his full set of medical records from the period during his imprisonment. That's number one. Number two, the district court could easily commission a doctor to do a medical evaluation of him. That's what happened in the Kelly case and there's no reason it couldn't be done here. Has it already been done? Not to my knowledge. There would be no – the district court would – There's a bit of a limit to that because it only tells how he is when the doctor does the evaluation. Well, the doctor would have access to all the medical records and just like any competency proceeding or any other type of proceeding which a conclusion must be drawn from a previous time frame, the expert would then be able to opine as to what his mental condition was during a period of time prior to the filing of the petition. You know, in these kinds of cases, the – well, first of all, the petitioner has to make some kind of a threshold showing right to be entitled to an evidentiary hearing. So the question is, did he make enough of a showing here? Now, the problem here I think as Judge Kleinfeld sort of mentioned is that this was a long period of time. So even though – and I think the record does show at least at certain periods of time he had serious mental problems. But the question is, you know, there's no showing that he was in this state for the entire period of time, right, over many, many years. And I don't know if there's any way to ever even find that out. Well, I think the first step is to try – number one, Your Honor, he did on page 132 of the excerpt of the record clearly establish with some specificity the fact that the mental illness prevented him from understanding his obligations. It's as specific or more specific than it was. It's elaborated even more in the documents filed in support of the application for certificate of appealability where both he and the person who assisted him, the jail inmate, who writes a declaration in great detail indicating why this person couldn't have operated sooner. I think – you know what troubles me here? On the one hand, the fellow is paranoid schizophrenic. In fact, that's about as bad a mental disease as there is, and it seems awfully harsh to hold him to a deadline when we don't know that he had a substantial lucid period during the allowable year. On the other hand, does that mean that the congressional one-year statute of limitations just doesn't apply to paranoid schizophrenics? They have the disease all their lives. Well, I think there has to be some allegations of how that condition has interfered, and when they are pro se and when they make specific allegations of that sort without a complete record, I think the district court needs to make some initial inquiry in order to comply with the basic liberality of pro se proceedings. I mean, nothing has changed since AEDPA, and the case law that's followed about the basic liberality and acquiescence to pro se petitioners. That's required, and the fact that the district court needs to exercise, as the exact words are ascertained, all possible grounds upon which the prisoner is entitled to relief, and that's unfortunately the law, or fortunately the law as to the district court's obligation in such matters. Again, I think the issue here is whether or not, as the district court said, the unconfirmed facts make it crystal clear that the petitioner is not entitled to relief. If that's not the case, then I believe a remand is warranted. I don't believe it's fair to have put the burden of persuasion on the petitioner when the law only requires him to make the initial allegations before an adventure hearing is required. Just allegations? I thought he needed a colorable showing or something like that. Well, he didn't. I apologize. He made more than allegations. He made specific statements as to how to interfere with his inability to understand timelines and the other requirements of a law. He did so. Yes, but, you know, as the district court said, there are long periods of time, I think maybe even a two-year period, where there's no showing at all as to what his condition was during this two-year period, and district courts said from 2005 and 2006. Well, those records were not available to him, and I think, as I said, the State of California had greater access to these records than his pro se petition did. I'd like to reserve the rest of my time. Thank you very much. Thank you, counsel. Good morning, Your Honors. Counsel? Julie Haley appearing for the appellee. I think the Court does really understand the considerations and the facts. To just answer a few questions, first of all, he needed five-and-a-half years of equitable tolling. I mean, it took him six-and-a-half years from the date of finality to file his petition, but he needed five-and-a-half years. And I also think that, Judge Kleinfeld, you understood correctly that the situation in this case is that he has suffered from these mental illnesses for 30 years. And when you look through the record, and just to opposing counsel's point, I have the great privilege of handling these cases quite often. And depending on what is proffered, I do go to the Department of Mental Health and get additional records. Do you know whether in this case, like, you know, does corrections have a more comprehensive medical record of this person? Yeah. I mean, essentially every prisoner, if you go to the, you know, you can request from the prison their entire mental health. Did you put that in? I didn't put the entire record in, and I'll tell you why. It's because when I looked at this record, this was not sort of the case of laws. Often when I have cases where a petitioner just says, I'm incompetent, and they just make a reply, and there's nothing in the record, I will go ahead, get the entire file, put it in there, look at it, and see if there's any legitimacy to their claims or not, and present that record to the district court. The problem with this case, as far as I'm concerned, I mean, there are great big chunks of time where there's no records at all, which would show his mental condition, you know, either way, right? Well, I think there are definitely periods of time. What we have, though, is that his allegation in this petition was as follows. He said that from 2001 to 2004, he was under numerous psychotropic medications due to his suffering from hallucinations and delusions, which substantially contributed to his inability to recognize or understand his obligations under the ADPA. Thereafter, he says, in 2004, he stopped taking the medication so he could deal with some physical health problems, and he started suffering from more physical health problems. So his proffer was the psychotropic drugs substantially affected my ability or contributed, and so he presented records to that effect. And what we have under there is, if you look at the excerpts of record at 150, 152, 153, 150, what I notice is that there was a period of time where when he first got admitted, you know, appreciate the man testified at trial, the quintessential act of competency, was found competent at trial, even though he's still suffering from all these things. He gets into prison, and what it looks like, a close reading of the record, is that he goes through one of these periods of psychotic thinking, that he's, you know, they're giving him the drugs, he gets medically compliant, and then you see by 115.03, he starts to report that there is still delusions, they're still going on because they go on all the time, but there's no functional impairment. I'm looking at excerpts of record, page 152. It says here that... It says delusions present, but no preoccupation. That means he still thinks he's Jesus Christ and he's talking to angels? I think what it means is that he still has these... I mean, what the original report says is that he suffers from religiosity. That was his delusion. That was his delusion. But he's not having a functional impairment. When you look at page... You don't call that a functional impairment? I mean, I have... You think you can talk to Jesus? I think it's a functional impairment. I shouldn't say that. I mean, you know, in his context. My point is... My point is that I've seen petitioners who believe, you know, that Oprah Winfrey is their girlfriend, but that doesn't make them legally or mentally incompetent. They still know that they're in prison, that they, you know, what crime they committed. The two are not the same. Obviously, you know, he is having preoccupations and he suffers from mental illness. And it seems when you look at the initial reports, it seems that he has these periods of it. It comes and it goes. I mean, what I thought was really remarkable is that after he got off the medications, he was saying that he was... You know, you look on page ER 153. This is when he's not medically compliant. And he says, you know, the assessment is that the inmate sounds rational and coherent. He denies any current issues. You know, he's... There's points in which he's, you know, he's doing quite well. And... How long did this period of doing well last? Well, it looks like it started... He started really turning around in March of 03 and it continued on. There's another record from 1130-04 on page 157 where he says delusions are present, but there's no preoccupation or functional impairment. I'm sorry. What page are you on? ER 157. Okay. Go ahead. If you look here, it's on page... I think it's on page 159. Let's see. He's just... He's reporting that, you know, it's continuing. I mean, he's just... I'm not quite there yet. I'm looking at page 156. I can't find the date on it. Oh, the date's up on the top, I believe. The demons can't bother him when he's asleep, that one. On page 156... The dates are usually... I'm not on 156. I'm on page 157 and the date is on the top. It's 1130-04. So what we see here is that even just from March of 03 to November of 04, the medical evaluation treatment plans that occur, and he has to get re-obsessed every several months, are showing that, you know, the medication is working when he's on it and he's not... I mean, it's an ongoing treatment plan. Obviously, you try to alleviate all of his mental illness. I have the impression, and I'm not sure this is right, that the guy is nuts enough to calm down his hallucinations and delusions and they have to give him enough medication so he's real sleepy all the time or asleep. It sounds like that. I mean, I think that he... Although they say consistently that there are no side effects. You'll see that, like, uniformly through the reports. I mean, he has some health issues. You know, it seems that he's suffering from, you know, I mean... I think it said the olanzapine makes him fat. Makes him tired. Right. But there's, like, a period when you look at 05, there's a report that he put in that, you know, the opposing counsel wants the court to consider where, again, he's... They just keep saying that, you know, he's not taking medications, yet he's lucid, he's coherent, and... What is the test again? What do we have to... Well, I mean, that's the other point, is that I think that what the test is, is that, you know, in terms of competency, I mean, in terms of the extraordinary circumstance of mental illness... The test for giving him an evidentiary hearing on equitable tolling. I think the test for giving him an evidentiary hearing is what we have contextually. It's a fact-by-fact, you know, you're looking at the case-by-case analysis. But in laws, what we had. In Kelly, what we had was Kelly was found, you know, a psychiatrist submitted a report... No, I mean there's a verbal formulation. You need... You need... Well, the formulation is... I can't remember the buzzwords. ...that the petitioner puts in a declaration or proffers that he is incompetent. There has to be an initial proffer of incompetency, and that is unrebutted. That's all there is. And that's what happened in laws. There was... He said, I'm incompetent. There were... The only evidence they had was that there was conflicting reports at the time of his trial, whether he was competent. Can you find a year in here when he was competent enough so he could have written up his habeas petition? Well, he never wrote a habeas petition. That's the other irony. I mean, he always relied and admitted, you know, from the beginning that he's never done his own work. He's used jailhouse people. I mean, my... What I find interesting is that why did he ever file a habeas petition? Because nothing's changed. I mean, it just goes... He's still suffering from the mental illnesses. And so I think that's the point, is that what the district court... And I think the district court's order in this case is incredibly thoughtful and thorough, if you read through it. And what the judge said was, you know, went through the facts of laws. When should I have an evidentiary hearing? I should have one unless there is sufficient evidence that counters those allegations. And what you have here is that Mr. Gatlin did not make an allegation of incompetence. He sort of says... What is his one-year period when he's in good enough shape to hire a jailhouse lawyer and get it done? In my estimation... During the five-and-a-half years. I want you to direct us so we can look at it and see... I think that from March of 2003 through... I mean, it looks like it's almost continuing onward. But I think in March of 2003, you start seeing a real turnaround. And that's when you see him not reporting about the hallucinations in terms of those being... I mean, he starts saying that he's feeling better. They're not observing any functional impairment. He's happy. He's really excited that he's a head porter. He's talking to people about what his jobs are. And I think you see that also, you know, periodically as we have these reports. Thank you, counsel. Thank you. Counsel claims March of 2003 was a turnaround. In November of 2004, this is what the records show, that his diagnostic picture remains essentially unchanged. Do you have a page reference to that, sir? This is ER 158 on. Well, he shows improvement in some areas. He was not doing well on CCCMS. He sleeps during the day and is awake at night. He talks to demons and angels. He believes he's going to die soon from his physical ailments because the angels told him so. That's the last word in the record that was provided upon the district court's order. So that's the last word. If that's improvement, then I don't believe it's much improvement, and it doesn't support at all the notion that somehow in March of 2003 his improvement changed. It's just not belied by the record. Certainly, it doesn't support the district court's inclusion that, quote, the uncontroverted facts of the record make it clear that his condition improved that the dismissal was warranted. The conclusion of the district court is simply belied by the record. The standard, by the way, in my view, the rule in this circuit, is that while it may have been technically possible to file a petition, the prisoner was unlikely to do so. That's the Harris v. Carter case on page 16 of the brief. That's the standard, and I think it's more than met by the record that exists. What is your answer to the judge saying there are no psychological evaluations after 2004 in the record? Well, that's true. I mean, that's part of the problem is that the petitioner did not have access to these things, and that's what makes it such a strange situation for the state to argue that he's improved  And you don't know whether there are any records or not, right? That's correct. I've personally tried to get records from him, but, again, given his situation, it's been very difficult to have him obtain what's necessary. All right. I'm kind of curious about something, and since I'm not eating into your time, even though it doesn't affect the outcome of your case, I'll go ahead and ask it. Suppose you win. He just dies on the street because there won't be anyone to take care of him at all. What is the value of getting him out? There might be all kinds of services available to him. Remember, this is a man that went to prison for life for stealing an automobile, which is nothing more than a joyride. So that's the other side of the coin in answer to the court's inquiry. Thank you very much. Thank you, counsel. Okay. Gatlin v. Tilton is submitted.
judges: Kleinfeld, Tashima, Thomas